UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PRIMO WATER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZEPHYR FLUID SOLUTIONS, LLC,<br><br>Defendant. | Civil Action No. 1:10-cv-931 |

# DEFENDANT ZEPHYR FLUID SOLUTIONS, LLC'S PROPOSED CLAIM CONSTRUCTIONS

Pursuant to this Court's Case Management Plan, Defendant Zephyr Fluid Solutions, LLC ("Zephyr") hereby submits its proposed claim constructions for United States Patent Nos. D542,495 (the " '495 Patent") and D565,268 (the " '268 Patent") assigned to Primo Water Corporation's ("Primo"). In its effort to broadly claim that any bottle return cage that competes with its own product infringes its design patents, the Plaintiff has thrown the basic tenets of design patent claim construction law out the window and ignores the functional design considerations that drive the basic design of its own product. Primo is trying to thwart competition by the use of its limited design patents because it cannot prevent competition through its narrow utility patent.

## I. Design Patent Infringement

Determining whether a design patent is infringed requires:

(1) Construction of the patent claim, and

1

(2) Comparison of the construed claim to the accused product.

*Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1376 (Fed. Cir. 2002).

Infringement of a design patent is determined by whether an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 681 (Fed. Cir. 2008) (*en banc*)

## II. Design Patent Claim Construction

A design patent claim is construed based on the drawings in the patent, the prior art, and statements made during the patent's prosecution. *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998). Every design patent is issued with a single claim depicted as a drawing. "Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010); *Contessa,* 282 F.3d at 1377 (construing a design patent claim as meaning "a tray of a certain design as shown in Figures 1-3"). "Thus an illustration depicts a design better 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Crocs*, 598 F.3d at 1302-03 (quoting *Dobson v. Dornan,* 118 U.S. 10, 14 (1886)). "[A]s a rule, the illustration in the drawing views is its own best description." *Id.* (quoting MPEP § 1503.01).

A design patent protects the non-functional aspects of an ornamental design as shown in the patent. *Keystone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). Thus, in construing the design patent claim, the non-

2

functional aspects of the design as shown in the patent must be identified. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The patented design is defined by the drawings in the patent, not just by one feature of the claimed invention. *Keystone*, 997 F.2d at 1450. There are no portions of a claimed design, which are immaterial or unimportant. *In re Blum*, 374 F.2d 904 (CCPA 1967).

The *Manual of Patent Examining Procedure* (8th ed. Revision 8 2010) ("MPEP") provides that

> The ornamental design which is being claimed must be shown in solid lines in the drawing. Dotted lines for the purpose of indicating unimportant or immaterial features of the design are not permitted. There are no portions of a claimed design which are immaterial or unimportant.

MPEP § 1503.02 (Form ¶ 15.50).

Broken lines are used to show unclaimed subject matter. MPEP § 1503.02(III) ("Unclaimed subject matter may be shown in broken lines for the purpose of illustrating the environment in which the article embodying the design is used. Unclaimed subject matter must be described as forming no part of the claimed design or of a specified embodiment thereof.")

### III. Design Patent File History Estoppel

The doctrine of prosecution history estoppel precludes a patentee from obtaining a construction of a claim that would, in effect, resurrect subject matter surrendered during exchanges with the PTO examiner. *Townsend Engineering Co. v. HiTec Co., Ltd.*, 829 F.2d 1086, 1090 (Fed. Cir. 1987). Prosecution history estoppel also limits the scope of the doctrine of equivalents.

Prosecution history estoppel applies to design patents. While courts typically apply prosecution history estoppel to cases that involve the infringement of utility or process patents under the doctrine of equivalents, prosecution history estoppel is also applicable to design patent infringement cases. *Australia Vision Services Pty. Ltd, v. Dioptics Medical Products, Inc.*, 29 F. Supp. 2d 1152, 1157-58 (C.D. Cal. 1998); *McGrady v. Aspenglas Corp.*, 487 F. Supp. 859, 861 (S.D.N.Y. 1980) ("That the question of file wrapper estoppel is uncommon in design patent cases is no reason to reject its use in an appropriate case.").

## IV. Construction of the '495 and '268 Patents

The '495 and '268 patents are directed to bottle return cages. The claim designs are all shown in solid lines. There are no broken or dotted lines to indicate unclaimed subject matter. Because all the features are shown in solid lines, they are all part of the claimed designs of the Primo patents.

The '268 patent claims a cage having an open lattice structure. The '495 patent claims a cage having an open lattice structure on the bottom quarter of the cage. The top portion of the cage is enclosed by a solid material on all four sides. The patented design does not disclaim any portion of the design, including the blank front panel.

Both designs have (i) a large inlet port for accepting returned bottles and (ii) a ticket dispenser. Each of these features are clearly functional in light of the purpose of the product and are found in the prior art (such as U.S. patents US5,161,661 and US5,355,987 and German patent DE 102 40 768 A1 and publication DE 297 06 654 U1). *See also* Declaration of Kevin Houlihan, ¶¶ 5-14. For example, an inlet port for a bottle

4

return cage must be located at the top to allow the cage to fill up. The inlet port is circular to accommodate the round bottles. A ticket dispenser is also required to print out a receipt for the customer. There must also be secure way for authorized individuals to access the bins to retrieve the empty bottles from the cage.

The open lattice design of the cage itself is functional in a number of ways: (1) the open lattice design allows air flow to dry the empty bottles, which are often wet when returned; (2) the open lattice design allows visual inspection to determine when the cage is full; and (3) the open lattice design uses less material, which reduces the weight of the cage and the cost to manufacture. All of these features are functional as evidenced by the prior art.

In addition, although Primo now argues in its claim construction statement that its patented design does not include any functional elements (Dkt. # 35 at p. 7; Dkt. # 35-5, Ex. E at Answer to Interrog. No. 7 ("no functional elements and/or functional considerations factored into the designs of the '495 and '268 Patents"), Primo itself has claimed that many of these features are functional. U.S. Pat. No. 7,921,979 (the " '979 patent") is a utility patent assigned to Primo, which has not been asserted against Zephyr. (A true and accurate copy of the '979 patent is attached as Exhibit A) The '979 patent is directed to the same subject matter as the two design patents. The '979 patent discloses that "[t]he receiving chute 15 may be spaced higher in the vertical direction than the bottom 20 so as to allow empty bottles 16 traveling there through to drop by gravity to the bottom 20." (Exh. A, Col. 6, ll. 64-66) The receiving chute is designed according to "the size, shape and dimensions of the bottles intended to be deposited in the apparatus."

5

(Exh. A, Col. 7, ll. 11-13)  The '979 patent discloses that it is advantageous to use three gallon and five gallon sized bottles and discloses dimensions of the receiving chute to be used.  (Exh. A, Col. 7, ll. 37-43)

The '979 patent discloses additional functional features such as a door and a receipt dispenser.  "As depicted in FIGS. 1, 5 and 10, the bottle sensor 17 is operatively connected to a receipt dispenser 18, which dispenses a receipt when an empty bottle 16 is deposited in the apparatus 10."  (Exh. A, Col. 8, ll. 61-64) "The bin 11 has at least one door 13 that is movable between a closed position (illustrated in FIGS. 1-3) that retains empty water bottles 16 in the interior of the bin 11, and an open position (illustrated in FIG. 4) that allows access to the interior of the bin 11 for removal of empty water bottles 16 inside the bin 11."  (Exh. A, Col. 5, ll. 60-65)

Further, "[b]ecause 'empty' beverage bottles often still contain moisture, it is desirable to facilitate air flow around empty water bottles that have been deposited in the bin 11 to help remove moisture from the apparatus 10, dry the empty bottles 16 and provide some deterrence against insect infestation while the bottles 16 are stored in the bin awaiting pick-up and reuse."  (Exh. A, Col. 9, ll. 53-59)  The circulation openings have a smaller area than the receiving chute so that the empty bottles cannot be removed through the circulation openings.  (Exh. A, Col. 10, ll. 1-8)

As shown below, the '979 patent has identical figures to the figures in the '495 and '268 patents.



Case 1:10-cv-00931-WO-JEP Document 39 Filed 10/14/11 Page 7 of 10

Primo claims that identical features are functional in '979 patent but are ornamental and nonfunctional in the '495 and '268 patents. A design that is purely functional and lacks ornamentality is invalid under 35 U.S.C. § 171. "The proper evidentiary basis for a rejection under 35 U.S.C. § 171 that a claim is lacking in ornamentality is *an evaluation of the appearance of the design itself*." MPEP § 1504.01(c)(II). Other information, such as the specification of an analogous utility patent "may be used to *supplement* the analysis of the design." *Id.* Accordingly, a claim that a design lacks ornamentality "because its appearance is dictated by functional requirements should be supported by reference to utility patents or some other source of information about the function of the design." *Id.*[1]

Accordingly, the functional features are excluded from the scope of the claimed designs. *OddzOn*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.")

For at least the above reasons, the '495 patent should be construed as all the nonfunctional elements identified with solid lines as shown in Figs. 1-6 that are not found in the prior art. Similarly, the '268 patent should be construed as all the nonfunctional elements identified with solid lines as shown in Figs. 1-6 that are not found in the prior art.

---

[1] Patent applicants have a duty of disclosure under Rule 56 of the USPTO to disclose any known information to the USPTO that is material to patentability of a pending application. 37 CFR §1.56. It does not appear that the application for the '979 patent was disclosed to the USPTO during prosecution of the applications for the design patents.

Respectfully submitted,

Dated: October 14, 2011            ___/Michael J. Rye/_____
Michael J. Rye
Christopher C. Boehm (P65225)
Cantor Colburn, LLP
20 Church Street
22nd Floor
Hartford, CT 06103
Tel.: 860-286-2929
Fax: 860-286-0115
Email: mrye@cantorcolburn.com
        cboehm@cantorcolburn.com


G. Gray Wilson
Wilson Helms & Cartledge, LLP
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
Tel: 336-631-8866
Fax: 336-631-9970
E-mail: gwilson@whclawfirm.com

Counsel for Zephyr Fluid Solutions, LLC

9

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on the 14th day of October, 2011, and that counsel for Plaintiff are listed on the Court's electronically mailing list for this case and will receive electronic notification of this filing.

                                                 /Michael J. Rye/
                                                Michael J. Rye